# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SARAH SIMMONS,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:12-CV-01115-RDP |
| } | |
| **BIG #1 MOTOR SPORTS, INC., et al.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on Defendant Kongsberg Inc.'s Motion to Quash Service of Process and to Dismiss Plaintiff's First Amended Complaint (Doc. # 1-10). Kongsberg asserts that it does not have sufficient contacts with the state of Alabama such that this court may properly exercise personal jurisdiction over it. (Doc. # 1-10). The matter has been fully briefed. (Docs. # 24, 25 and 26).

### I.   Background

This case arises out of an accident which occurred when Plaintiff crashed her Can-Am Spyder motorcycle, which she had purchased in Alabama. (Doc. # 1-10).

Defendant Kongsberg Inc. is a Canadian company with its principal place of business in Quebec, Canada. (Doc. # 1-10). Kongsberg describes its business as the "engineering, design, and manufacture of products for the global vehicle industry." (Doc. # 24-1). Kongsberg designed, manufactured, distributed, sold, and repaired the dynamic power steering system ("DPS") in Plaintiff's Can-Am Spyder. (Doc. # 1-10). Plaintiff asserts that the DPS system manufactured by Kongsberg was defective and caused the subject accident. (Doc. # 1-10).

Kongsberg sold DPS systems to Defendant Bombardier Recreational Products, Inc. ("BRP") in Canada. (Doc. # 1-10). Generally, when Kongsberg sold these DPS systems to BRP, it delivered them in Canada. Thereafter, DRP sold the Can-Am Spyders in the United States, including in Alabama. (Doc. # 1-10). Kongsberg did not have any input, nor is there any evidence that it attempted to restrict, where BRP sold the Can-Am Spyders containing the DPS systems. (Doc. # 1-10).

During initial discovery as to personal jurisdiction, Plaintiff requested information from Kongsberg regarding its contacts with Alabama during the last 10 years. (Doc. # 24). Rather than respond to that request, Kongsberg limited its response to a three year time period 2006 -2009. (Doc. # 25). During that limited period of time, Kongsberg states that it made fifteen shipments of products, unrelated to the Can-Am Spyder, directly to Alabama. Furthermore, in relation to a recall of the subject DPS systems, evidence in the record suggests that Kongsberg shipped replacement DPS systems directly to dealers in the United States, including in Alabama. (Doc. # 24-2).[1] Plaintiff did not receive her recall notice regarding the DPS system until after her accident. (Doc. # 26).

## II.     Standard of Review

Under Federal Rule of Civil Procedure 12(b)(2), "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010), quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (internal quotations omitted). If the nonresident

---

[1] Fact disputes at this stage must be resolved in the non-movant's favor. *King v. General Motors Corp.*, 2012 WL 1430066 *3 (N.D. Ala. 2012).

defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.*, quoting *Mazer*, 556 F.3d at 1274, quoting in turn *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (internal quotations omitted). If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.*, quoting *Meier*, 288 F.3d at 1269 (internal quotations omitted).

**III.   Analysis**

To determine whether specific personal jurisdiction[2] exists, the court must look at the applicable state long-arm statute and the federal due process requirements. *Cronin v. Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir.1993) (citing *Pesoplastic C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985)). Alabama's long-arm statute permits personal jurisdiction to the extent allowed by the United States Constitution. Ala. R. Civ. P. 4 .2(a)(2); *see Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993). "When the courts of the forum State have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, state law need not be applied: [the court] need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Vermeulen v. Renault U.S.A ., Inc.*, 975 F.2d 746, 753 (11th Cir. 1992).

---

[2] Of the two types of personal jurisdiction, general and specific, only specific jurisdiction appears to be at issue here.  In any event, the evidence before the court does not support a finding of general jurisdiction because there is insufficient evidence that Kongsberg has had "continuous and systematic contacts" with the State of Alabama. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-15 (1984).

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties or relations." *Marbury v. Am. Truetzschler*, 111 F.Supp.2d 1281, 1283 (M.D. Ala. 2000), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (internal quotations omitted). An analysis of due process involves a two-step process: first, the court must determine whether the defendant has "sufficient minimum contacts with the forum state"; second, the court must consider whether exercising personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Vermeulen*, 985 F.2d 1534, 1545 (11th Cir. 1993), quoting *Int'l Shoe*, 326 U.S. at 316. This two part test "embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign." *Id.,* quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

  **1. Has Kongsberg had sufficient minimum contacts with Alabama?**

To have constitutionally minimum contacts, a defendant's contacts with the forum must (1) be related to the cause of action or have given rise to it; (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) be of a nature that the defendant should reasonably anticipate being haled into court in the forum. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

  **a. Contacts related to the cause of action in this case.**

Kongsberg manufactured the DPS system for BRP for use in BRP's Can-Am Spyder. Kongsberg manufactures products for the "global vehicle industry." (Doc. # 24-1). Plaintiff's Complaint alleges that it was Kongsberg's DPS faulty system which cause the accident which is the subject of this lawsuit. After Plaintiff's accident, Kongsberg issued a recall of the DPS system and,

4

as part of that recall, shipped replacement DPS systems directly to dealers in the United States, including in Alabama. (Doc. # 24-2). Kongsberg's design and manufacture of the DPS system is directly related to the cause of action.

> b. Did Kongsberg purposefully avail itself of the privilege of conducting business within the forum?

Plaintiff relies on the "stream of commerce" theory of personal jurisdiction, which provides that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993), citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980). The "stream of commerce" theory provides the easier test for a plaintiff to meet. *Askue v. Aurora Corp. of America*, 2012 WL 843939 *5 (N.D. Ga. 2012); *see also Vermeulen*, 985 F.2d at 1547 (the "stream of commerce plus" test also requires a plaintiff to establish that the defendant did something more to "purposefully avail itself of the market in the forum State.").

The Eleventh Circuit has also applied, but not explicitly adopted, a more onerous test: the "stream of commerce plus" analysis, which arose from Justice O' Connor's plurality opinion in *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 110 (1987). The "stream of commerce plus" test not only requires that the defendant place a product in the stream of commerce that ends up in the forum state, but also that the defendant do something more to "purposefully avail itself of the market in the forum State." *Vermeulen*, 985 F.2d at 1547 (citing *Asahi*, 480 U.S. at 110).

It is unclear which of the two tests the Eleventh Circuit endorses under the facts of this case. *See Vermeulen*, 985 F.2d at 1546 (applying "stream of commerce plus" test, but not explicitly adopting it); *Morris v. SSE, Inc.*, 843 F.2d 489, 493 n. 5 (11th Cir. 1988) (applying Justice O'Connor's test from *Asahi* and noting that satisfaction of the narrower test articulated by Justice O'Connor satisfies other broader tests articulated in *Asahi* ). *But see Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1357–58 (11th Cir. 2000) (applying "stream of commerce" test and *Calder* effects test).

Courts here (and elsewhere) have continued to add this confusion despite an unsuccessful attempt by the Supreme Court to clarify the issue in *J. McIntyre Machinery, Ltd. v. Nicastro*, –––U.S. –––, 131 S.Ct. 2780 (2011). Kongsberg argues that *McIntyre* materially changes the applicable analysis. But most district courts which have analyzed that decision disagree. *See, e.g., King v. General Motors Corp.*, 2012 WL 1430066 *3 (N.D. Ala. 2012); *Askue v. Aurora Corp. of America*, 2012 WL 843939 *6-7 (N.D. Ga. 2012); *Ainsworth v. Cargotec USA, Inc.*, 2011 WL 6291812 *2 (S.D. Miss. 2011).

The *McIntyre* decision was fragmented; no opinion enjoyed the assent of five Justices. Therefore, in applying the case, courts have considered Justice Breyer's concurring opinion as the holding of the Court because he concurred in the judgment on the narrowest grounds.[3]

Justice Breyer expressly declined to address the Supreme Court's split in *Asahi* as to whether mere foreseeability is a constitutionally sufficient basis for the exercise of personal jurisdiction under

---

[3] *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'"); *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007) (same, quoting *Marks, supra*).

the stream-of-commerce theory. *McIntyre*, 131 S.Ct. at 2792. Instead, he considered *McIntyre's* facts according to each side of the *Asahi* split and concluded that the record contained insufficient evidence to justify the exercise of personal jurisdiction under either analysis. *McIntyre*, 131 S.Ct. at 2792.

Based upon current and applicable case law in the Eleventh Circuit, the "stream of commerce" theory is still good law. Under that theory, this court notes the following: (1) Kongsberg describes itself as being "involved in the engineering, design, and manufacturing of products for the global vehicle industry"; (2) Kongsberg manufactured the DPS system at issue and sold it to BRP for use in its Can-Am Spyders; (3) Kongsberg was aware that BRP marketed its product's throughout the entire United States, including Alabama; and (4) there is no evidence that Kongsberg made any attempt to limit the scope of BRP's marketing and distribution efforts ("Kongsberg, Inc. has not had any input, control, participation, or specific knowledge regarding where or to whom BRP sold Can-Am Spyders that incorporated the DPS system.") (Doc. # 24-1). Additionally, during the one short time period Kongsberg was willing to provide information, it shipped goods directly to Alabama on at least fifteen occasions. Moreover, after Plaintiff's accident, Kongsberg assisted in recall efforts related to the DPS in Alabama. By designing the DPS system for a manufacturer that distributes nationally in the United States, Kongsberg thereby invoked the benefits and protections of those states, including Alabama. *World-Wide,* 444 U.S. at 297. Therefore, "it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *Id.*

      **c.**      **Could Kongsberg reasonably anticipate being haled into court there?**

As noted above, Kongsberg designed and manufactured its products for a global market. It was aware that its product would be incorporated into the Can-Am Spyder and distributed in the national market, which includes Alabama. This court finds that Kongsberg could reasonably anticipate that a plaintiff may hale it into a court in any state, including Alabama, due to an alleged defect with its product. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir .1988); *Marbury*, 111 F.Supp.2d at 1286.

      **2.**      **Fair play and substantial justice.**

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). Such factors include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477, quoting *World-Wide*, 444 U.S. at 292 (internal quotations marks omitted).

In *Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 834 (11th Cir.1992), the Eleventh Circuit found that exercising personal jurisdiction over the Louisiana and South Carolina insurance guaranty associations comported with fair play and substantial justice. The court noted that "modern transportation and communication have made it much less burdensome for a party sued to defend [itself] in a State where he engages in economic activity." *Id.*, quoting *McGee v. Int'l Life Ins. Co.*,

355 U.S. 220, 222-23 (1957). The court found that requiring adjudication in Alabama would not impose a substantial burden on the defendant insurance guaranty associations, whereas requiring the plaintiff to litigate his claim in two different courts would "spread thin his resources", "hamper his ability to obtain quick, convenient, and effective relief," and "pose an unnecessary waste of precious judicial resources" by requiring duplicative litigation in two different fora. *Id.*

In *Marbury*, an Alabama plaintiff was injured at work by a machine defectively designed and manufactured by a foreign defendant. 111 F.Supp.2d 1281, 1283 (M.D. Ala. 2000). In determining whether the exercise of personal jurisdiction comported with fair play and substantial justice, the court found that "[u]nlike *Asahi*, this is not a case of a foreign corporation seeking indemnification. Here, Plaintiff is an Alabama citizen seeking relief for personal injuries sustained in an incident involving [Defendant's] allegedly defective machine. Accordingly, Plaintiff has a manifest interest in having his case adjudicated in Alabama." *Id.* at 1287.

In *Ex parte DBI, Inc.*, 23 So.3d 635, 655 (Ala. 2009), the Alabama Supreme court held that an Alabama state trial court correctly determined that there was personal jurisdiction over a company (DBI) under circumstances quite similar to those presented by this case. In that case, the decedent was killed in an automobile accident in a car manufactured by Kia Motors. The defendant challenging personal jurisdiction, DBI, was a Korean seat belt manufacturer who merely provided seat belts to Kia. *Ex parte DBI, Inc.*, 23 So.3d at 637. The decedent's estate sued DBI in Alabama state court alleging that the seat belt was defective and contributed to the decedent's death. The court noted that the automobile containing the allegedly defective seat belt did not find its way to Alabama randomly and fortuitously. Rather, it was sold in Alabama to an Alabama resident by a dealer acting for a manufacturer (Kia) with which DBI had significant ties. Under these

circumstances, applying the stream of commerce test, the Alabama Supreme Court held that the trial court properly exercised personal jurisdiction over DBI. *Ex parte DBI, Inc.*, 23 So.3d at 655-57.

The decision in *Ex Parte DBI* is obviously not binding here. But the court finds its analysis and reasoning persuasive, and also finds that exercising personal jurisdiction over Kongsberg comports with fair play and substantial justice. Kongsberg manufactured the DPS system for BRP who sold the vehicle at issue in Alabama to an Alabama resident. Kongsberg made no effort to limit the markets in which the DPS system was distributed. As in *Ex parte DBI*, this court may properly exercise personal jurisdiction over Kongsberg. 23 So.3d at 655-57.

In terms of Alabama's interest in adjudicating the dispute, "Alabama has an interest in seeing that persons using products purposefully sent into the state are not seriously injured because of a product defect." *Morris*, 843 F.2d at 495. With respect to the interstate judicial system's interest in "obtaining the most efficient resolution of the controversy," Alabama is "where the alleged accident occurred, diversity jurisdiction exists, and [several] witnesses reside." *Id.* (internal citations omitted). Evidence and witnesses related to the accident itself would be located in Alabama. *Id.* Finally, to the extent there are any clashes between the laws of Alabama and Quebec, those can be accommodated through choice-of-law rules. *Id.*; *see also Burger King*, 471 U.S. at 477. Accordingly, considering all the factors in *Burger King*, this court finds that the exercise of personal jurisdiction over Kongsberg does not offend traditional notions of fair play and substantial justice.

**IV.     Conclusion**

The court finds that the exercise of personal jurisdiction over Kongsberg is consistent with the Due Process Clause of the United States Constitution, and therefore is also in compliance with Alabama's long-arm statute. Therefore, Defendant Kongsberg Inc.'s Motion to Quash Service of

Process and to Dismiss Plaintiff's First Amended Complaint (Doc. # 1-10) is due to be denied. A separate order will be entered.

      **DONE** and **ORDERED** this \_\_\_\_5th\_\_\_\_ day of November, 2012.

                                      **R. DAVID PROCTOR**
                                      UNITED STATES DISTRICT JUDGE